# EXHIBIT 1

```
1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE WESTERN DISTRICT OF TEXAS
2                            WACO DIVISION
     VLSI TECHNOLOGY LLC              *
3                                     *
     VS.                              * CIVIL ACTION NO. AU-19-CV-977
4                                     *
     INTEL CORPORATION                *      February 1, 2021
5
          BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
6                     DISCOVERY HEARING (via Zoom)

7    APPEARANCES:

8    For the Plaintiff:      Ian Robert Washburn, Esq.
                             Michael D. Harbour, Esq.
9                            Irell & Manella, L.L.P.
                             1800 Avenue of the Stars, Suite 900
10                           Los Angeles, CA 90067-4276

11                           J. Mark Mann, Esq.
                             Andy W. Tindel, Esq.
12                           Mann, Tindel & Thompson
                             112 East Line Street, Suite 304
13                           Tyler, TX 75702

14   For the Defendant:      J. Stephen Ravel, Esq.
                             Kelly Hart & Hallman LLP
15                           303 Colorado Street, Suite 2000
                             Austin, TX 78701
16
                             Mark D. Selwyn, Esq.
17                           Liv Herriot, Esq.
                             Wilmer Cutler Pickering Hale Dorr LLP
18                           2600 El Camino Real, Suite 400
                             Palo Alto, CA 94306
19
                             Joseph Mueller, Esq.
20                           WilmerHale
                             60 State Street
21                           Boston, MA 02109

22                           Amanda L. Major, Esq.
                             Wilmer Cutler Pickering Hale Dorr LLP
23                           1875 Pennsylvania Ave., NW
                             Washington, DC 20006
24

25
```

```
1                          James Eric Wren, III, Esq.
                           Baylor University Law School
2                          One Bear Place #97288
                           Waco, TX 76798-7288
3
    Court Reporter:        Kristie M. Davis
4                          United States District Court
                           PO Box 20994
5                          Waco, Texas 76702-0994

6

7

8        Proceedings recorded by mechanical stenography, transcript

9   produced by computer-aided transcription.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| 10:03 | 1 | (February 1, 2021, 10:03 a.m.) |
| 10:03 | 2 | DEPUTY CLERK:  Discovery Hearing in Civil Action |
| 10:03 | 3 | 1:19-CV-977, styled VLSI Technology LLC versus Intel |
| 10:03 | 4 | Corporation. |
| 10:03 | 5 | THE COURT:  If I could hear announcements, please, |
| 10:03 | 6 | starting with the plaintiff and then for defendant. |
| 10:03 | 7 | MR. MANN:  Good morning, Your Honor.  Mark Mann on behalf |
| 10:03 | 8 | of VLSI, along with Andy Tindel, and my colleagues from Irell & |
| 10:04 | 9 | Manella, Ian Washburn and Michael Harbour.  And we're ready to |
| 10:04 | 10 | proceed. |
| 10:04 | 11 | THE COURT:  Mr. Ravel? |
| 10:04 | 12 | MR. RAVEL:  Your Honor, Steve Ravel for defendant Intel. |
| 10:04 | 13 | Our client rep today is Mashood Rassam.  Jim Wren is here with |
| 10:04 | 14 | us.  Bill Lee sends his regrets, but here from Wilmer are Liv |
| 10:04 | 15 | Herriot, whose first argument you assigned a five-star Yelp |
| 10:04 | 16 | rating about six months ago. |
| 10:04 | 17 | (Laughter.) |
| 10:04 | 18 | MR. RAVEL:  Amanda Major, Joe Mueller, and our primary |
| 10:04 | 19 | speaker today will be Mark Selwyn. |
| 10:04 | 20 | THE COURT:  Okay.  I'm happy to take up whatever you all |
| 10:04 | 21 | would care for me to take up. |
| 10:04 | 22 | MR. SELWYN:  Good morning, Your Honor.  Mark Selwyn for |
| 10:04 | 23 | Intel.  We're here to address Intel's request for relief from |
| 10:04 | 24 | the protective order. |
| 10:04 | 25 | THE COURT:  Okay. |

10:04  1      MR. SELWYN:  As Your Honor will recall, the protective

10:04  2  order entered in this case states at Paragraph 65 that it is

10:05  3  entered without prejudice to the right of any party to apply to

10:05  4  the Court at any time for additional protection or to relax or

10:05  5  rescind the restrictions of this order when convenience or

10:05  6  necessity requires.

10:05  7      In Paragraph 43 of the protective order which relates to

10:05  8  the use to which designated material may be put, similarly

10:05  9  contemplates that the Court may order relief from the

10:05  10 restrictions of the protective order.  And that language in the

10:05  11 Court's protective order is hardly unique.  Protective orders

10:05  12 generally include language regarding the ability of any party

10:05  13 to seek to relax or rescind restrictions imposed by a

10:05  14 protective order on how documents may be used.

10:05  15     Judge Chen, who is presiding over the antitrust litigation

10:05  16 involving VLSI and Intel in the Northern District of California

10:05  17 also in his decision recognized that a party is generally free

10:06  18 to seek relief from protective orders to use otherwise

10:06  19 restricted information and documents for purposes of related

10:06  20 litigation.

10:06  21     Last month Judge Chen, when he dismissed Intel and Apple's

10:06  22 amended complaint based on what he identified as shortcomings

10:06  23 in the level of detail alleged, wrote that Intel and Apple,

10:06  24 "could have asked the courts presiding over the VLSI

10:06  25 infringement suits against Intel for relief from the protective

10:06  1  order so that they can make a filing under seal in this case to

10:06  2  provide further evidence to support their allegations."

10:06  3          THE COURT:  Meaning the case out there -- when you say

10:06  4  "this case," meaning the case --

10:06  5          MR. SELWYN:  Correct.

10:06  6          THE COURT:  Okay.  Got it.

10:06  7          MR. SELWYN:  I'm quoting from his decision.

10:06  8          THE COURT:  Got it.

10:06  9          MR. SELWYN:  And he granted leave to amend, ruling that

10:06  10  Intel and Apple could file an amended complaint that includes

10:07  11  the information that he found to be missing.

10:07  12          So that's why we are here today.  Intel is seeking relief

10:07  13  from the protective order entered in this case so that it may

10:07  14  file under seal in the antitrust litigation the three very

10:07  15  specific pieces of information that we have identified in the

10:07  16  joint table submitted to the Court before this hearing.

10:07  17          And the three pieces of information are the following:

10:07  18  The cost to acquire two of the patents-in-suit, statements made

10:07  19  by VLSI's expert regarding the alleged value and significance

10:07  20  of the '357 patent and statements made by VLSI's expert

10:07  21  regarding the alleged value and significance of the '983

10:07  22  patent.

10:07  23          So Intel is not seeking broad categories of documents or

10:07  24  information as has been suggested by VLSI.  We've identified

10:08  25  very precisely that which we are seeking relief from the

10:08  1  protective order to use in the antitrust litigation and very

10:08  2  precisely where that information can be found.  We're seeking

10:08  3  to use in the antitrust litigation a total of three documents

10:08  4  subject to this Court's protective order.  So it's a very

10:08  5  bounded request.

10:08  6      VLSI's suggestion that it relied on the protective order

10:08  7  somehow being immutable, and its charge that Intel is now

10:08  8  reneging on the stipulation is respectfully not correct.  The

10:08  9  protective order itself makes clear that any party can seek to

10:08  10  modify any portion of it.

10:08  11      And the three specific pieces of information we've

10:08  12  identified comports with what Judge Chen stated.  We could seek

10:08  13  relief from protective orders in underlying patent infringement

10:08  14  litigations to obtain, and with what he indicated was the type

10:09  15  of detail that would be relevant to Intel and Apple's

10:09  16  allegations about VLSI and others extracting super-competitive

10:09  17  royalties.

10:09  18      Why is the information about purchase price and damages

10:09  19  claims and the differential between them relevant?  Well, to

10:09  20  just try to briefly summarize.  It's relevant for two primary

10:09  21  reasons in that litigation.  First, it will provide further

10:09  22  evidence of how VLSI has sought super-competitive royalties.

10:09  23  And, second, the statements of VLSI's own experts about the

10:09  24  value and the significance of the '357 and '983 patents will

10:09  25  address the issue that Judge Chen raised in his decision of

| | | |
|---|---|---|
| 10:09 | 1 | whether VLSI considers those two patents to be "crown jewels of |
| 10:09 | 2 | the field or just a small portion of a large field of |
| 10:10 | 3 | substitutes." |
| 10:10 | 4 | In opposing our request for relief from the protective |
| 10:10 | 5 | order, VLSI doesn't suggest that the confidentiality of this |
| 10:10 | 6 | information will be jeopardized by the disclosure to another |
| 10:10 | 7 | court, and of course it won't.  The information will only be |
| 10:10 | 8 | disclosed to Judge Chen, and it will be under seal.  Nor does |
| 10:10 | 9 | VLSI explain how it will be prejudiced in any way by Intel's |
| 10:10 | 10 | request, and of course it won't.  It will be free to make its |
| 10:10 | 11 | relevance arguments to Judge Chen. |
| 10:10 | 12 | So at bottom we would suggest VLSI simply wants to keep |
| 10:10 | 13 | information from the Court in the Northern District of |
| 10:10 | 14 | California that would further support the allegations that |
| 10:10 | 15 | Intel and Apple have made in the antitrust litigation.  This |
| 10:10 | 16 | presents precisely the situation where courts have granted |
| 10:10 | 17 | relief from protective orders. |
| 10:10 | 18 | So we're coming to Your Honor based upon the paragraphs in |
| 10:10 | 19 | the protective order that say that a party can seek relief to |
| 10:11 | 20 | relax or rescind restrictions.  We're seeking very specific |
| 10:11 | 21 | bounded documents.  They will be submitted under seal to the |
| 10:11 | 22 | Court in California for purposes relevant to the Court's |
| 10:11 | 23 | decision in California. |
| 10:11 | 24 | THE COURT:  Mr. Mann, who will be speaking on behalf of |
| 10:11 | 25 | the plaintiff? |

10:11    1         MR. WASHBURN:  Good morning, Your Honor -- sorry.

10:11    2         MR. MANN:  I'm sorry.  Mr. Washburn, Your Honor, to answer

10:11    3    the question.

10:11    4         THE COURT:  Thank you, sir.

10:11    5         MR. WASHBURN:  And, Your Honor, also on the line is my

10:11    6    colleague, Mr. Harbour.  Mr. Harbour is heavily involved in

10:11    7    Intel's antitrust suit against VLSI in Northern California.  I

10:11    8    plan to primarily argue, but if Your Honor has questions about

10:11    9    that case, Mr. Harbour may be able to help as well.

10:11   10         THE COURT:  Okay.

10:11   11         MR. WASHBURN:  Let me briefly address two topics, Your

10:11   12    Honor, starting with why Intel's request should be denied.

10:11   13         First, Your Honor ordered Intel and VLSI in your

10:12   14    protective order to only use confidential information produced

10:12   15    in any of the three cases before Your Honor for purposes of

10:12   16    that case or certain specifically-listed related infringement

10:12   17    cases.  You ordered us and Intel not to use confidential

10:12   18    information for any other purpose.

10:12   19         We have obeyed that.  For example, although we have access

10:12   20    to a lot of Intel's source code and specifications, and

10:12   21    although we have a lot of patents that are not in this case, we

10:12   22    have not used our access to Intel's source code in this case to

10:12   23    investigate other infringement claims we could file against

10:12   24    Intel.

10:12   25         Respectfully, Intel has already been using information

| 10:12 | 1 | from this case to develop claims against VLSI here in antitrust |
| 10:12 | 2 | claim.  In breach of your order and their own stipulation, they |
| 10:12 | 3 | wouldn't be asking you for this relief if they hadn't already |
| 10:12 | 4 | thought about it. |
| 10:12 | 5 | So, and just as an example, they've stated to Judge Chen, |
| 10:12 | 6 | "the arm's length acquisition prices for these patents are in |
| 10:12 | 7 | the low millions of dollars," and that the damages demands |
| 10:13 | 8 | "exceed by magnitude upon magnitude upon magnitude the |
| 10:13 | 9 | acquisition price." |
| 10:13 | 10 | So they have been using information under your PO to |
| 10:13 | 11 | develop claims, and now they're asking to do it more.  And |
| 10:13 | 12 | respectfully, Your Honor, we submit that should not be allowed. |
| 10:13 | 13 | This is analogous to allowing us to use Intel's technical |
| 10:13 | 14 | information in this case to evaluate whether to pursue |
| 10:13 | 15 | additional patent litigation against Intel.  And if Your |
| 10:13 | 16 | Honor's not going to allow us to do that, you should also not |
| 10:13 | 17 | allow Intel to do this. |
| 10:13 | 18 | Second reason to deny, Your Honor, Intel has repeatedly |
| 10:13 | 19 | refused -- |
| 10:13 | 20 | THE COURT:  Let me stop you there. |
| 10:13 | 21 | I'd like to hear from -- I'll let you continue afterwards, |
| 10:13 | 22 | but I'd like to hear from counsel for Intel in response to |
| 10:13 | 23 | that.  I think that's a pretty compelling argument about metes |
| 10:13 | 24 | and bounds of what was exchanged in this case and what it could |
| 10:13 | 25 | be used for.  And if it wasn't this case, it was certainly in |

| | |
|---|---|
| 10:13 | 1 |
| 10:14 | 2 |
| 10:14 | 3 |
| 10:14 | 4 |
| 10:14 | 5 |
| 10:14 | 6 |
| 10:14 | 7 |
| 10:14 | 8 |
| 10:14 | 9 |
| 10:14 | 10 |

13 million others that I've heard fights between counsel, when the lead fights we have when turning over source code is making sure that we quarantine it so that it's used for this litigation and not by plaintiffs like VLSI for future litigation, specifically as you said.

So I'd like to hear from Intel's counsel as to why the same -- why it's not a mirror concern here that Intel be able to use information that VLSI provided to it under the protection of this protective order.

I've already heard and understand that the boilerplate language that is in every protective order that, you know, allows it to be modified or allows me to modify it.  But I'd like to hear, Mr. Selwyn, if you would directly address what was just said.

MR. SELWYN:  Certainly.  Your Honor, we have not used any of the protected information we are seeing from this case for the antitrust litigation, and we will not unless and until given permission to do so.

As the protective order in this case contemplates, we are seeking permission from this Court to use the protected information we have specified from this case for the antitrust litigation, and VLSI is challenging us for asking for permission.  That is not in any way a violation of a protective order.

Under VLSI's reasoning, a party would never be able to

| 10:15 | 1 | move for relief from a protective order without violating that |
| 10:15 | 2 | protective order, because in its mere suggestion by a party |
| 10:15 | 3 | that it has identified information or categories of information |
| 10:15 | 4 | for another case would itself be a protective order violation. |
| 10:15 | 5 | THE COURT:  Mr. Selwyn, forgive me, but you're not |
| 10:15 | 6 | addressing at all what I just asked. |
| 10:16 | 7 | I get that there are reasons why you have -- you could |
| 10:16 | 8 | look back, looking backwards you might say, "Okay, I'm going to |
| 10:16 | 9 | allow this to be used." |
| 10:16 | 10 | What I would like you to specifically address to me is -- |
| 10:16 | 11 | I can only imagine what Intel's response would be if |
| 10:16 | 12 | Mr. Washburn came in and said, "We've changed our mind.  We'd |
| 10:16 | 13 | like to go file some more lawsuits against Intel.  We'd like to |
| 10:16 | 14 | use the source code that was provided to us in this case under |
| 10:16 | 15 | the protective order with an agreement that we wouldn't use it |
| 10:16 | 16 | in future cases, and, Judge, look at this boilerplate language |
| 10:16 | 17 | here.  It says 'protective orders are always subject to change' |
| 10:16 | 18 | and so, you know, wave my hands and it's okay." |
| 10:16 | 19 | My question to you is this:  Is to me -- to me I find the |
| 10:17 | 20 | information that you are seeking from the plaintiff here to be |
| 10:17 | 21 | equally the crown jewels that Intel would -- I can't think of |
| 10:17 | 22 | anything that is more of a crown jewel to the plaintiff, this |
| 10:17 | 23 | kind of plaintiff than the information you're seeking; and so |
| 10:17 | 24 | to me it's information of equal dignity and Intel certainly |
| 10:17 | 25 | would never agree that its source code that's provided in this |

10:17  1  case so that the plaintiffs could make their infringement

10:17  2  contentions would ever be allowed to be used in a manner in

10:17  3  another case, to shore up infringement contentions in another

10:17  4  case, to create new infringement contentions, to bring

10:17  5  lawsuits, so I want you to address not whether or not the

10:17  6  protective order allows for an amendment to be made.

10:18  7      Tell me why if the exchange -- the consideration that was

10:18  8  exchanged between the parties here was plaintiff gave this kind

10:18  9  of crown jewel information to the defendant under a

10:18  10  confidentiality agreement that it wouldn't be used for any

10:18  11  purpose other than this litigation, Intel provided its source

10:18  12  code so that as crown jewel information with the agreement it

10:18  13  wouldn't be used or seen by anyone outside of this litigation,

10:18  14  why should I not protect the information that the plaintiff

10:18  15  wants me to protect?

10:18  16      And let me add one more thing.  An argument I could

10:18  17  foresee would be that if there's information -- I anticipate

10:18  18  Intel wanting to be pretty careful during the trial when source

10:18  19  code is discussed.  I'm anticipating Intel is going to say:

10:19  20  We'd like to close the courtroom.  We'd like this to be

10:19  21  confidential because we don't want this information getting

10:19  22  out.

10:19  23      I can see -- I could see the plaintiff saying exactly the

10:19  24  same thing with the reciprocal information of theirs:  We don't

10:19  25  want this information getting out.

10:19  1      So I anticipate that even during the course of trial this
10:19  2  information won't become public and, therefore, the exchange of
10:19  3  it was given by the parties with the understanding that it
10:19  4  would be maintained confidential and quarantined in this case.
10:19  5  So that's what you need to address.
10:19  6      MR. SELWYN:  The information that we're seeking would
10:19  7  continue to remain confidential.  It would be subject to --
10:19  8      THE COURT:  And used only in this case.  I mean, that's
10:19  9  the problem.  I get it's going to remain confidential until,
10:19  10  for example, the judge decided it wouldn't have to be
10:19  11  confidential.
10:19  12      I mean, once it's cabined only -- once I allow it to go to
10:20  13  that court, it's cabined only under his discretion of whether
10:20  14  or not -- and I'm not debating that.  I would feel the same way
10:20  15  if it came to me.  I would say now it's in my court and I'm
10:20  16  going to exercise it, and I'm completely okay with the idea
10:20  17  another federal judge would then decide whether my issue is the
10:20  18  information was exchanged to Intel, only with the agreement
10:20  19  that it would not be used except in this litigation.
10:20  20      And that seems pretty obvious to me.  In all the years
10:20  21  I've practiced, I can't -- and I long ago represented Intel.  I
10:20  22  can't even imagine Intel agreeing to give up information in
10:20  23  this case, in a case knowing that a judge could decide that
10:20  24  the -- a non-practicing entity would be able to use it for any
10:20  25  other reason other than in this case, especially for help in

| | | |
|---|---|---|
| 10:20 | 1 | another litigation, which is exactly -- there's no difference |
| 10:21 | 2 | between you wanting to use this information in your antitrust |
| 10:21 | 3 | case than it is my good friend Mr. Washburn wanting to use your |
| 10:21 | 4 | Intel source code to bring other patent lawsuits. |
| 10:21 | 5 | It's -- you want to use confidential information in this |
| 10:21 | 6 | case, in another case, in another litigation, and that is not |
| 10:21 | 7 | at all what the plaintiff agreed to, anymore than Intel agreed |
| 10:21 | 8 | to the use of the source code. |
| 10:21 | 9 | MR. SELWYN:  And, Your Honor, the source code is a good |
| 10:21 | 10 | example because, in fact, the parties have agreed that there |
| 10:21 | 11 | would be cross use of the source code between the cases.  And |
| 10:21 | 12 | that's by agreement to the parties, which the protective order |
| 10:21 | 13 | allows the parties to do. |
| 10:21 | 14 | THE COURT:  The cases in this Court.  The case that's in |
| 10:21 | 15 | this Court. |
| 10:21 | 16 | MR. SELWYN:  No, Your Honor.  The cases in this Court and |
| 10:21 | 17 | the cases in Delaware.  So it's cross use between courts. |
| 10:21 | 18 | THE COURT:  But not to -- but you have not agreed -- if |
| 10:21 | 19 | you've agreed -- I'll tell you what, I'll make a deal with you. |
| 10:21 | 20 | Let's cut direct to the chase. |
| 10:22 | 21 | If Intel is willing to agree to allow Mr. Washburn and |
| 10:22 | 22 | VLSI to use the source code that Intel has produced for the |
| 10:22 | 23 | purposes of use in current litigation -- I'm aware of the |
| 10:22 | 24 | Delaware litigation in fact -- if Intel is willing to strip |
| 10:22 | 25 | from the protective order the use -- the protection from the |

| | |
|---|---|
| 10:22 | 1 |
| 10:22 | 2 |
| 10:22 | 3 |
| 10:22 | 4 |
| 10:22 | 5 |
| 10:22 | 6 |
| 10:22 | 7 |
| 10:22 | 8 |
| 10:22 | 9 |
| 10:23 | 10 |
| 10:23 | 11 |
| 10:23 | 12 |
| 10:23 | 13 |
| 10:23 | 14 |
| 10:23 | 15 |
| 10:23 | 16 |
| 10:23 | 17 |
| 10:23 | 18 |
| 10:23 | 19 |
| 10:23 | 20 |
| 10:23 | 21 |
| 10:23 | 22 |
| 10:23 | 23 |
| 10:23 | 24 |
| 10:23 | 25 |

use of source code for other purposes for other litigation --
and by that I mean to determine whether or not Intel -- other
Intel products infringe other patents that VLSI owns, then I'll
be happy to consider allowing you to use this information of
VLSI's in the California litigation.

MR. SELWYN:  So with respect, Your Honor, I think that
this is a different issue.  And it's a different issue because
Judge Chen has said that this is information that would lend
further support to the allegations in Intel and Apple's
complaint to be filed next month.  And he indicated that this
was the type of thing that Intel could have sought relief under
the terms of the protective order to obtain.

And I would respectfully suggest that Paragraph 65 of the
protective order, it is not mere boilerplate but it's an
important part of protective orders that allow parties to come
back where there is relevant information to be used in another
forum.

Now, you have to, of course, ask permission for that.
There has to be made a showing of why you want to use it.  For
example, in the Peleton case that we refer to in the table,
Judge Payne considered a similar situation where a party wanted
to use protective information before the PTAB.  And a similar
argument was made by the party opposing production.

And Judge Payne said even though at the time the
protective order was entered, the party that produced the

| | | |
|---|---|---|
| 10:24 | 1 | information may have assumed it would only be used for this |
| 10:24 | 2 | case, they couldn't have anticipated this situation. |
| 10:24 | 3 | THE COURT:  Was the PTAB case in that case related to the |
| 10:24 | 4 | same patents that were asserted? |
| 10:24 | 5 | MR. SELWYN:  Yes. |
| 10:24 | 6 | THE COURT:  Okay.  I don't see that similar in any way to |
| 10:24 | 7 | this.  Do you have anything else that you'd like to add? |
| 10:24 | 8 | MR. SELWYN:  I think it is similar because it goes to the |
| 10:24 | 9 | question of the relevance of the information to be considered |
| 10:24 | 10 | by another forum. |
| 10:24 | 11 | Here we have a situation where there really is no dispute |
| 10:24 | 12 | that it would be relevant to Judge Chen, that he has indicated |
| 10:24 | 13 | in his decision that it's relevant and that it will be |
| 10:24 | 14 | protected and sealed in the Northern District of California. |
| 10:24 | 15 | So this is a typical situation of coming back to the |
| 10:24 | 16 | Court, asking for permission for relief to use what is clearly |
| 10:24 | 17 | relevant information and that it remained sealed -- |
| 10:24 | 18 | THE COURT:  If it is typical, why have I not seen it in |
| 10:24 | 19 | two and a half years?  It's not typical to me and I don't |
| 10:25 | 20 | recall, in the 20 years I practiced, this happening either. |
| 10:25 | 21 | MR. SELWYN:  It is, I would say, Your Honor, a typical |
| 10:25 | 22 | situation for seeking relief from a protective order.  Granted, |
| 10:25 | 23 | parties don't often come to seek relief, but this is a |
| 10:25 | 24 | situation where another federal judge has expressly said:  This |
| 10:25 | 25 | is information that could be considered in support of Intel's |

10:25　1　and Apple's amended complaint.

10:25　2　　　So you may not see these motions every day, but it is a

10:25　3　typical situation where it is appropriate to grant relief from

10:25　4　the strictures of the protective order where the information is

10:25　5　relevant.  There's no question that it will be maintained in

10:25　6　confidence by the other court and there's no prejudice to the

10:25　7　party opposing the production.

10:25　8　　　THE COURT:  Anything else you'd like to add?

10:25　9　　　MR. SELWYN:  No, Your Honor.

10:25　10　　　THE COURT:  Okay.  I'll be back with y'all in a few

10:25　11　seconds.

10:25　12　　　(Pause in proceedings.)

10:29　13　　　THE COURT:  If we could go back on the record, please.

10:29　14　　　The Court is going to deny the relief that Intel is

10:29　15　seeking.  Let me make as clear as possible, I have great

10:29　16　respect for my brethren in California, and I certainly am not

10:29　17　doing this because I have any doubt that information that he

10:29　18　would be using would be maintained in an entirely appropriate

10:29　19　manner; but I'm going to choose not to amend my protective

10:29　20　order for the reasons I think I've made pretty clear on the

10:29　21　record.

10:29　22　　　Mr. Mann, is there any other issue that we need to take up

10:29　23　this morning?

10:29　24　　　MR. MANN:  No, Your Honor.

10:29　25　　　THE COURT:  Mr. Ravel?

10:29  1      MR. RAVEL:  No, Judge.  That's it.

10:29  2      THE COURT:  Let me ask you this.  You're free -- I'll

10:29  3  start with Mr. Mann and then you're free to tell me it's none

10:30  4  of my business.  I'm just a little curious.  When are you folks

10:30  5  headed to Waco, Mr. Mann?

10:30  6      MR. MANN:  I'm heading there Thursday.  I think my

10:30  7  colleagues from California are coming in Saturday.  There's

10:30  8  probably the preparatory team coming in Wednesday or Thursday

10:30  9  for other issues at the hotel.

10:30  10      THE COURT:  Mr. Ravel?

10:30  11      MR. RAVEL:  I think pretty close to the same time, maybe

10:30  12  trending toward the beginning part of next week.

10:30  13      THE COURT:  Okay.  I hope you all -- I hope we've made

10:30  14  clear to you all that you have complete, open access to the

10:30  15  courtroom for your folks to come in and set up whatever

10:30  16  equipment you need to set up.

10:30  17      Are you all working with Blake or one of my law clerks,

10:30  18  whoever it is, if you don't have Blake's number, you should get

10:30  19  it on speed dial and make sure -- he's my technical person --

10:30  20  and I'm telling you in advance you have permission during

10:31  21  regular work hours to come in at any time and be setting up for

10:31  22  the trial.

10:31  23      So if you have any issues there, please let me or my law

10:31  24  clerks know and I will take care.

10:31  25      MR. MANN:  Thanks, Your Honor.  Mr. Ravel and I are

| | | |
|---|---|---|
| 10:31 | 1 | talking evidently on trying to set up a live feed to some other |
| 10:31 | 2 | rooms that we can use.  So... |
| 10:31 | 3 | THE COURT:  Great.  Great.  Yeah.  I think -- and I would |
| 10:31 | 4 | not mind having your input -- my thinking is, at the moment, |
| 10:31 | 5 | we've got two really big rooms.  I'm sure you've been to both |
| 10:31 | 6 | of them which are the other courtrooms and then the jury -- not |
| 10:31 | 7 | my little jury usual room, but where we bring the jurors, all |
| 10:31 | 8 | the jurors in, we do the grand jury.  You all might try and |
| 10:31 | 9 | figure out which you think is the better -- last time we had |
| 10:31 | 10 | the jurors, last three times I think we put the jurors in the |
| 10:32 | 11 | other district courtroom and let them spread out, and put the |
| 10:32 | 12 | video feed in the big jury impaneling room. |
| 10:32 | 13 | I'm not sure that that's the best way one way or the |
| 10:32 | 14 | other, and what I would suggest is whichever is easier to do |
| 10:32 | 15 | the live feed to would be the one not to put the jury in |
| 10:32 | 16 | because they're not going to need it.  They're going to be in |
| 10:32 | 17 | person. |
| 10:32 | 18 | So if one room or the other is easier to do, because I |
| 10:32 | 19 | anticipate some members of the public would want to come in and |
| 10:32 | 20 | watch lawyers of this caliber try this case, and so I want to |
| 10:32 | 21 | make it as accessible to the public as I can through that feed. |
| 10:32 | 22 | So, again, as you're working with Blake, whichever makes |
| 10:32 | 23 | the most sense to you all is -- would be absolutely fine with |
| 10:32 | 24 | me.  So... |
| 10:32 | 25 | MR. MANN:  Thank you, Your Honor. |

10:32  1      MR. RAVEL:  Judge, thanks for that.  While we're on the

10:32  2  subject, the pretrial order between the parties contemplates

10:33  3  that the -- it could be broader than that, to anyone who is

10:33  4  entitled to see it and...

10:33  5      THE COURT:  You blanked out on whatever your key word was.

10:33  6  I don't know what it is you're talking about because the --

10:33  7  your mic went out.  What is the topic we're talking about?

10:33  8      MR. RAVEL:  Under the parties' pretrial order they had

10:33  9  suggested that the feed can be --

10:33  10     THE COURT:  Oh, the feed --

10:33  11     MR. RAVEL:  -- seen by anyone who is allowed under the

10:33  12  protective order to see it.

10:33  13     THE COURT:  Yes, sir.

10:33  14     MR. RAVEL:  And the preliminary view from technical people

10:33  15  is that that puts no stress on the Court, that once we have the

10:33  16  feed, we can then use it appropriately.  And I just wanted the

10:33  17  Court to know about that pretrial order --

10:33  18     THE COURT:  I think --

10:33  19     MR. RAVEL:  -- agreement and that the parties are working

10:33  20  together to both make this safe in the COVID sense and to put

10:33  21  this Court on the map.  There is a technical superstar who

10:34  22  allows all that to happen.

10:34  23     THE COURT:  Yeah.  Let me ask you one more thing.  And I'm

10:34  24  not holding you to either -- this is purely for planning

10:34  25  purposes.  You can -- if this changes, you just need to let the

10:34  1   other side know a day or two ahead of time.

10:34  2       But, Mr. Mann, do you plan to have anyone attending as a

10:34  3   witness by video?

10:34  4       MR. MANN:  I think we may have one, at least, but I --

10:34  5   that's not been finalized yet.

10:34  6       THE COURT:  Okay.  And the only reason I care, again, is

10:34  7   this:  Number one, the time to let the other side know it's

10:34  8   going to be by video is not that morning.  And the time to let

10:34  9   me know, unless something really happens, is not that morning,

10:34  10  just because I want to make sure it works, not being all

10:34  11  federal judgy about it.  You guys have complete control of the

10:34  12  order of witnesses and all that.  That's what trial lawyers do.

10:34  13      It's just I want to make sure, number one, if you tell me

10:34  14  Dr. Smith is going to be there on Tuesday but he's going to be

10:35  15  by videotape, we know to be ready for that.  And also the other

10:35  16  side knows how they're going to have to prepare for it.  And

10:35  17  vice versa.  And that might be the only thing that would be a

10:35  18  little bit harder to do just on the ad-lib unless something

10:35  19  came up.

10:35  20      I think I've told you this before too, if you have anyone

10:35  21  who is going to attend in person who has any sensitivity about

10:35  22  coming through the courtroom -- I'm sorry, courthouse, let me

10:35  23  know in advance and we will adapt to that and make sure that

10:35  24  that person can enter and leave the courtroom as safely as

10:35  25  possible.  I'm happy to make that accommodation.

| | | |
|---|---|---|
| 10:35 | 1 | And then, finally, there is -- there have been requests |
| 10:35 | 2 | from reporters to be able to attend the trial by Zoom.  That is |
| 10:36 | 3 | fine with me.  I'm not sure it's fine with the judicial world, |
| 10:36 | 4 | however, so I'm going to look into that myself and make sure |
| 10:36 | 5 | that -- you keep telling me they can't fire me, but I don't |
| 10:36 | 6 | want to test that theory.  And so -- I kind of already am, I |
| 10:36 | 7 | guess, but... |
| 10:36 | 8 | And so does anyone have -- would anyone have an |
| 10:36 | 9 | objection -- and this would not be during anything that was |
| 10:36 | 10 | where the courtroom was closed for tiny amounts of time -- but |
| 10:36 | 11 | does either party have any objection to -- if I get approval to |
| 10:36 | 12 | allow reporters to attend the trial by Zoom, does anyone object |
| 10:36 | 13 | to that? |
| 10:36 | 14 | I'll start with Mr. Ravel, just because he's dead center |
| 10:36 | 15 | in my screen. |
| 10:36 | 16 | MR. RAVEL:  It's not something we've talked about |
| 10:36 | 17 | internally, Judge.  I'd want to have a caveat that I could get |
| 10:36 | 18 | overruled by this, but I don't see any problem with that at |
| 10:36 | 19 | this point, with the Court's caveat that both sides' |
| 10:37 | 20 | confidential information is -- |
| 10:37 | 21 | THE COURT:  Correct.  No, no, no.  I will -- in fact, that |
| 10:37 | 22 | will be the easiest thing to do, will be to shut that video |
| 10:37 | 23 | feed off during that period of time.  That's easier than |
| 10:37 | 24 | clearing the courtroom, so yeah. |
| 10:37 | 25 | But I'm just -- I want to make sure you all don't object. |

| | | |
|---|---|---|
| 10:37 | 1 | If I can get permission to allow reporters to attend by Zoom, |
| 10:37 | 2 | that would be my preference.  You know, because people can't |
| 10:37 | 3 | attend it in person.  I mean, we're going to be limited on |
| 10:37 | 4 | people space. |
| 10:37 | 5 |     MR. RAVEL:  Judge, that concept is consistent with what |
| 10:37 | 6 | the parties are working toward on the pretrial order.  So it |
| 10:37 | 7 | basically sounds good to us. |
| 10:37 | 8 |     THE COURT:  Mr. Mann? |
| 10:37 | 9 |     MR. MANN:  I think I have been saying both, Your Honor.  I |
| 10:37 | 10 | don't see an issue, but I need to talk to my colleagues and -- |
| 10:37 | 11 |     THE COURT:  Okay.  And your client.  And by the way, this |
| 10:37 | 12 | is one of those deals where you get a veto.  I mean, if someone |
| 10:38 | 13 | says, no, we don't want that, then I won't do it.  I'm -- you |
| 10:38 | 14 | know, during COVID time being able to do this means fewer |
| 10:38 | 15 | people trying to get into the limited number of seats that |
| 10:38 | 16 | we're going to be having in the courtroom, is the deal.  So |
| 10:38 | 17 | hopefully it won't be a big deal for you all, but certainly let |
| 10:38 | 18 | me know.  Okay. |
| 10:38 | 19 |     MR. TINDEL:  Judge. |
| 10:38 | 20 |     THE COURT:  Mr. Tindel? |
| 10:38 | 21 |     MR. TINDEL:  When you say "reporters to participate by a |
| 10:38 | 22 | Zoom link," do you mean just specified people having a Zoom |
| 10:38 | 23 | link or are you talking about an open public link that |
| 10:38 | 24 | reporters or anybody else can dial into? |
| 10:38 | 25 |     THE COURT:  At the moment I'm just talking about reporters |

10:38  1  who request it.  I don't know what the rules are at this point
10:38  2  on allowing the world to watch -- again, not sensitive periods,
10:38  3  but I'm not sure what the rules are on me making the Zoom feed
10:38  4  live and available to everyone.
10:38  5      That would be a pretty bold thing for a federal court to
10:39  6  do, and I just don't know if I have the -- I think it would be
10:39  7  great.  I mean, I can't imagine any reason why -- you know, the
10:39  8  Supreme Court is -- they're not on video, but they're doing
10:39  9  live feeds of their -- to the world now, you know.  When the
10:39  10  Supreme Court has oral arguments, I'm sure you all, like me,
10:39  11  are right there listening to them live, because I have -- I
10:39  12  just don't have anything better to do.  And that's a true
10:39  13  story.  I really do do that.
10:39  14      But, you know, maybe we are evolving in federal courts to
10:39  15  the idea that people will be able to attend things in that
10:39  16  manner, because -- but I will have to get approval for that.
10:39  17      MR. MANN:  I'd like to exclude my wife, because of her
10:39  18  criticisms of me.  So...
10:39  19      (Laughter.)
10:39  20      THE COURT:  I can't imagine any woman being married to
10:39  21  you, Mark Mann, that doesn't feel like every day like she's the
10:39  22  luckiest person on the planet.
10:39  23      MR. MANN:  Judge, I'm sending that home to her.
10:39  24      MR. TINDEL:  Judge, I know Debbie and she does not feel
10:40  25  that way.

10:40  1          (Laughter.)

10:40  2          MR. MANN:  Somebody has to keep you grounded.

10:40  3          THE COURT:  I understand.  In fact, as soon as I hang up

10:40  4  here I'm going to go find out just how happy my wife is with me

10:40  5  this morning.  So we'll see.  So it's a Monday, you never know.

10:40  6          But so, you gentlemen have a great afternoon, and I look

10:40  7  forward very much to seeing you in -- two weeks from tomorrow.

10:40  8  If anything comes up, by the way, especially with regard to

10:40  9  doing the voir dire that is a problem between now and then that

10:40 10  you think of, please let me know and we'll take care of it,

10:40 11  because that's just a week from Thursday.

10:40 12          MR. TINDEL:  Judge, one more question.

10:40 13          THE COURT:  Of course.

10:40 14          MR. TINDEL:  The 15th, which is the President's Day

10:40 15  holiday, is the courthouse going to be closed?

10:40 16          THE COURT:  I'm sure it will be.  Yeah.  I will have no

10:40 17  one -- I mean, if you guys need to be let in, I don't know if

10:40 18  I'll be there or not.  Probably my law clerks will be, and if

10:40 19  we need to let you -- but I'm not even sure I could allow you

10:41 20  guys in, because my guess is we'll have no security in the

10:41 21  courthouse.  And I'm not sure I can let people just be in the

10:41 22  courthouse.  If an emergency comes up and you all need to get

10:41 23  in for some reason, and Evan or someone's there and can let you

10:41 24  in and do something short and quick, I'm sure that'll be fine.

10:41 25  But I'm 99 percent sure that the courthouse will be closed and

10:41  1    will have no security, and I don't know that I would be allowed

10:41  2    to let you all in.

10:41  3        MR. TINDEL:  So the safe thing to do would be all our

10:41  4    technical setups for both parties, et cetera, really needs to

10:41  5    get done Friday.

10:41  6        THE COURT:  Yes.  I could not put it better.  That's why

10:41  7    I'm telling you on February 1st you have between now and a week

10:41  8    from Friday, you have open access and during business hours to

10:41  9    have anyone come in there at any time.

10:41  10       I don't think -- I may have sentencings this Wednesday and

10:42  11   next.  Well, Wednesdays are the only days I do things in person

10:42  12   in the court, because that's when I do my sentencings, and I

10:42  13   have to do those in person mostly.  But other than that, the

10:42  14   courtroom is yours to do whatever you want to.

10:42  15       MR. TINDEL:  Thank you.

10:42  16       THE COURT:  But I would say, yeah.  I would say Friday at

10:42  17   5 o'clock, a week Friday at 5 o'clock is drop dead.

10:42  18       And Evan just texted me -- this is what makes technology

10:42  19   so great.  I could act like I know what my schedule is but I

10:42  20   don't.  I have sentencings this week but none next week, so

10:42  21   literally all five days next week are available to your

10:42  22   technical people.

10:42  23       MR. TINDEL:  Thank you, Your Honor.

10:42  24       THE COURT:  Now, if we're going to be on Zoom, someone

10:42  25   needs to help me make sure that I find a way to look good if

10:42  1  I'm going to be on Zoom.  Maybe I should make that a rule that

10:42  2  they can't show me.  So, but at least it means for a change

10:42  3  I'll stay awake during the trial.  That'd be a good thing.

10:42  4       So anything else?

10:42  5       MR. RAVEL:  No, Judge.

10:43  6       THE COURT:  Okay.  Y'all have a good afternoon.  Take

10:43  7  care.

10:43  8       (Hearing adjourned at 10:43 a.m.)

       9

      10

      11

      12

      13

      14

      15

      16

      17

      18

      19

      20

      21

      22

      23

      24

      25

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS    )

3

4      I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8      I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10  United States.

11      Certified to by me this 1st day of February 2021.

12

13                              */s/ Kristie M. Davis*
                                KRISTIE M. DAVIS
                                Official Court Reporter
14                              800 Franklin Avenue
                                Waco, Texas 76701
15                              (254) 340-6114
                                kmdaviscsr@yahoo.com
16

17

18

19

20

21

22

23

24

25